**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

WENI ODILLE GUTIERREZ,

                             Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES
LLC; TRANS UNION, LLC; and RENT
RECOVERY SOLUTIONS, LLC,

                            Defendants.

CASE NO.: 1:21-cv-00420

**JURY TRIAL DEMANDED**

## COMPLAINT

    Weni Odille Gutierrez ("Plaintiff" or "Ms. Gutierrez") brings this Complaint against Equifax Information Services LLC ("Equifax"); Trans Union, LLC ("Trans Union"); and Rent Recovery Solutions, LLC ("Rent Recovery") (collectively the "Defendants") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*. and the Texas Debt Collection Act ("TXDCA"), Tex. Fin. Code § 392, *et seq*.

## PRELIMINARY STATEMENT

    1.    This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought pursuant to the FCRA, FDCPA, and TXDCA.

    2.    The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, ***accuracy***, relevancy, and proper utilization of such information." 15

1

U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of information, § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

3.     Similarly, the purpose of the FDCPA and TXDCA is to protect purported consumer debtors from unfair and unconscionable debt collection tactics.

4.     This case concerns Rent Recovery's unlawful debt collection tactics and Equifax and Trans Union's reporting of a derogatory collection account in the amount of $7,522.00 on Plaintiff's credit reports, which was settled out of court with the non-party creditor, Stone Creek, and it was agreed to amongst Plaintiff and Stone Creek that "no amounts are due to STONE CREEK."

5.     Accordingly, Plaintiff brings claims against Equifax and Trans Union for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for Equifax's failure to fulfill its reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

6.     Plaintiff also brings claims against Rent Recovery for violations of the FCRA when it failed to report the underlying debt to the consumer reporting agencies as in dispute, violations of the TXDCA by failing to fully and properly investigate Plaintiff's disputes and reporting a debt that was not owed by Plaintiff to the consumer reporting agencies in further violation of the TXDCA and the FDCPA, and using unconscionable means to collect the alleged debt.

## THE PARTIES

7.     Plaintiff Weni Odille Gutierrez ("Plaintiff") is a natural person who resides in the City of Austin, State of Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c), 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

8.     Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company authorized to do business in the State of Texas, including the Western District.

9.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

10.     Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company authorized to do business in the State of Texas, including the Western District.

11.     Trans Union is a "consumer reporting agency[1]" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

12.     Defendant Rent Recovery Solutions, LLC ("Rent Recovery") is a foreign limited liability company and a "debt collector," as defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6), and a "third-party debt collector" as defined by Tex. Fin. Code § 392.001(7), with a principal place of business located in Atlanta, Georgia. Rent Recovery is registered as a debt collector with the State of Texas and conducts business by way of attempting to collect debts in

---

[1] At all relevant times hereto, the term "consumer reporting agency" is analogous to the term "credit bureau" as defined by Tex. Fin. Code § 392.001(4).

the State of Texas, including the Western District. Rent Recovery is also a "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367, and pursuant to 15 U.S.C. §§ 1681p and § 1692k(d), which allow claims under the FCRA, FDCPA and TXDCA to be brought in this Court.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### Plaintiff and Stone Creek Resolve a Civil Action by Entering into a Settlement Agreement in April 2018

15.     In or about June 2017, Plaintiff leased an apartment unit from The Park at Stone Creek ("Stone Creek") in Austin, Texas ("the Leased Premises").

16.     In or about April 2018, a payment dispute arose between Stone Creek and Plaintiff regarding the Leased Premises, which resulted in Stone Creek filing a civil eviction action against Plaintiff entitled *TMIF Park at Stone Creek, LP d/b/a Park at Stone Creek Apartments v. Weni Gutierrez and all Occupants*, J1-CV-18-000797, in the Justice Court, Precinct One, Travis County, Texas ("the Civil Action").

17.     Discovery in the Civil Action uncovered the fact that there were discrepancies in Stone Creek's payment history records and that sloppy record keeping had resulted in Stone Creek mistakenly charging Plaintiff more than she owed pursuant to the lease agreement.

18.     Stone Creek filed the Civil Action after Plaintiff refused to pay the inaccurate amount Stone Creek demanded she pay ("the alleged debt")[2].

19.     Once it became clear that Stone Creek's Civil Action was based on the faulty premise that Plaintiff had failed to timely pay her monthly rent pursuant to the lease agreement, and that the payment dispute was based solely on Stone Creek's accounting error, Stone Creek agreed to settle the Civil Action and dismiss it outright.

20.     On April 13, 2018, Plaintiff and Stone Creek entered into a Settlement Agreement whereby Stone Creek agreed, among other things, to dismiss the Civil Action against Plaintiff if Plaintiff vacated and returned the keys for the Leased Premises on or before May 1, 2018.

21.     The Settlement Agreement also stated that in the event Plaintiff vacated and returned the keys for the Leased Premises on or before May 1, 2018, Stone Creek would file a dismissal with prejudice of the Civil Action and "no amounts are due to STONE CREEK" regarding the alleged debt.

22.     On April 13, 2018, a representative of Stone Creek and Plaintiff both executed the Settlement Agreement.

**The Civil Action is Dismissed with Prejudice in May 2018**

23.     On May 2, 2018, Stone Creek filed its *Plaintiff's Notice of Non-Suit* and the Court accepted the same and ordered that the Civil Action against Plaintiff be dismissed with prejudice with no amounts owed to Stone Creek.

---

[2] At all times relevant hereto, the alleged debt is an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction, are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment as defined by 15 U.S.C. § 1692a(5) and Tex. Fin. Code 392.001(2).

**Stone Creek Refers the Settled Debt to Debt Collector, I.Q. Data International, Inc. in July 2018**

24.     In or about July 2018, Stone Creek referred the settled debt, Account #0008380055 ("the settled debt"), to non-party I.Q. Data International, Inc. ("IQ Data"), a debt collector headquartered in Bothell, Washington.

25.     Immediately thereafter, IQ Data began attempting to collect the settled debt of $7,611.09 from Plaintiff using various means, including via telephone and written letter.

**Cornerstone Home Lending Denies Plaintiff's Credit Application for a Home Mortgage Loan in February 2019**

26.     In or about January 2019, Plaintiff began looking for a condominium to purchase in the greater Austin, Texas area.

27.     Plaintiff found a high-quality, two-bedroom condominium in a safe part of Austin, Texas (the "Austin Condo") that was well-suited to the needs of her and her family, including her thirteen and seven-year-old daughters.

28.     The Austin Condo was listed at $165,000.00 and was well within Plaintiff's budget, as she had the necessary funds to put towards the down payment.

29.     On or about January 11, 2019, Plaintiff submitted a credit application with Cornerstone Home Lending, Inc. ("Cornerstone Lending"), seeking financing for the Austin Condo.

30.     After obtaining and reviewing Plaintiff's Equifax and Trans Union credit reports, a representative of Cornerstone Lending informed Plaintiff that it could not move forward with financing for Plaintiff given the IQ Data collection account appearing on her Equifax and Trans Union credit reports, which was negatively impacting her credit scores.

31.     Plaintiff, shocked and upset that the settled debt had been reported on her Equifax and Trans Union credit reports, assured the representative at Cornerstone Lending that the alleged debt associated with the collection account had been settled on April 13, 2018, with no amounts due to Stone Creek, and dismissed with prejudice on May 3, 2018. Plaintiff also provided Cornerstone Lending with a copy of the Settlement Agreement and Dismissal Order, serving as proof of the fact that her credit reports were inaccurate.

32.     The Cornerstone Lending representative informed Plaintiff that it would not be able to assist her with financing the Austin Condo unless or until the IQ Data collection account was removed from her credit reports.

33.     Plaintiff's credit application with Cornerstone Lending was denied due to Equifax and Trans Union's inaccurate credit reporting.

**Plaintiff's Disputes with Equifax and Trans Union in February 2019**

34.     On or about February 1, 2019, a Cornerstone Lending representative, on behalf of Plaintiff, sent a written dispute to Equifax and Trans Union's consumer dispute departments, disputing the inaccurate reporting of the IQ Data International tradeline, Account #0008380055.

**The Consumer Reporting Agencies' Method for Considering Consumer Credit Report Disputes**

35.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

36.     Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated

consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

37.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

38.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rent, and employment decisions regarding consumers.

39.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification (ACDV) electronic form.

40.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

41.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**Equifax and Trans Union's Responses to Plaintiff's February 2019 Disputes**

42.    In or about February 2019, Trans Union sent an ACDV to IQ Data regarding the disputed tradeline, Account number ending in 0055.

43.    In or about February 2019, IQ Data instructed Trans Union to delete Account #0008380055 from Plaintiff's credit report.

44.    In or about February 2019, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting IQ Data's requested deletion of the

tradeline and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union removed the disputed tradeline from Plaintiff's Trans Union credit report.

45.     In or about February 2019, Equifax sent an ACDV to IQ Data regarding the disputed tradeline, Account number ending in 0055.

46.     In or about February 2019, IQ Data instructed Equifax to delete Account #0008380055 from Plaintiff's credit report.

47.     In or about February 2019, Equifax completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting IQ Data's requested deletion of the tradeline and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Equifax removed the disputed tradeline from Plaintiff's Equifax credit report.

### IQ Data Sells the Settled Debt to Debt Collector Rent Recovery Solutions in 2019

48.     In or about 2019, IQ Data sold the settled debt to Rent Recovery Solutions ("Rent Recovery"), a debt collector headquartered in Atlanta, Georgia.

49.     Shortly thereafter, in or about January 2019, Rent Recovery placed the settled debt account for collection and began attempting to collect the settled debt of $7,611.09 from Plaintiff using various means, including via telephone, written letter, and by furnishing data regarding the settled debt account to the credit bureau defendants, Equifax and Trans Union.

### Rent Recovery Begins Furnishing Data Regarding the Settled Debt Account to Equifax and Trans Union in 2019

50.     At some point after February 2019, Rent Recovery furnished data to the credit bureaus, including Equifax and Trans Union, regarding the settled debt collection tradeline ("Rent Recovery collection tradeline"), Account number ending in 8933.

**Comenity Capital Bank Denies Plaintiff's Credit Application in July 2019**

51.     On or about July 17, 2019, Plaintiff submitted a credit application with Comenity Capital Bank ("Comenity Bank") for a retail credit card.

52.     On or about July 17, 2019, Comenity Bank requested a copy of Plaintiff's Equifax credit report, which included the Rent Recovery collection tradeline, Account number ending in 8933.

53.     Shortly thereafter, in or about July 2019, Comenity Bank informed Plaintiff that her credit application had been denied due to her credit score.

54.     Plaintiff's credit application with Comenity Bank was denied due to Equifax's inaccurate credit reporting, specifically with regard to the Rent Recovery collection tradeline, Account number ending in 8933.

**The Jordan at Mueller Denies Plaintiff's Credit Application to Rent an Apartment Unit in August 2019**

55.     On or about August 19, 2019, Plaintiff submitted a rental application at The Jordan at Mueller Apartment complex ("the Jordan at Mueller"), located in Austin, Texas, along with payment for an initial deposit and tenant screening report fee.

56.     Plaintiff sought to rent a three-bedroom, two-bathroom apartment unit ("the Jordan Unit") for her and her two young daughters.

57.     On or about August 19, 2019, The Jordan at Mueller requested a tenant screening report regarding Plaintiff from non-party AmRent, which was completed on or about August 21, 2019.

58.     AmRent's report included Plaintiff's credit history as reported by Trans Union, which included the settled debt Rent Recovery collection tradeline, Account number ending in 8933.

59.     After obtaining and reviewing Plaintiff's AmRent report, including the Credit History section, a representative of The Jordan at Mueller informed Plaintiff that it could not move forward with her rental application given the Rent Recovery collection account appearing on her AmRent report, which was negatively impacting her credit score.

60.     Shortly thereafter, in or about August 2019, Plaintiff received an adverse action notice from The Jordan at Mueller, titled Denial Notification, specifically indicating that Plaintiff's rental application had been denied due to "delinquent past or present rental obligations" and "[c]redit history reflects an unpaid balance in the amount of $7,522.00 owed to the Park at Stone Creek."

61.     Plaintiff's rental application with The Jordan at Mueller was denied due to Trans Union's inaccurate credit reporting, specifically with regard to the Rent Recovery collection tradeline, Account number ending in 8933.

**AMLI at Mueller Denies Plaintiff's Rent Application in January 2020**

62.     In or about mid-January 2020, Plaintiff submitted a rental application at AMLI at Mueller apartment complex ("AMLI Mueller"), located in Austin, Texas, along with payment for an initial deposit and tenant screening report fee.

63.     Plaintiff sought to rent a three-bedroom, two-bathroom apartment unit ("the AMLI Unit") for her and her two young daughters.

64.     On or about January 24, 2020, AMLI at Mueller requested a tenant screening report regarding Plaintiff from non-party Leasing Desk Screening ("Leasing Desk"), which was completed on or about January 24, 2020.

65.     Leasing Desk's report included Plaintiff's credit history as reported by Equifax, which included the Rent Recovery collection tradeline, Account number ending in 8933.

66.     After obtaining and reviewing Plaintiff's Leasing Desk report, including the Credit History section, a representative of AMLI at Mueller informed Plaintiff that it could not move forward with her rental application given the Rent Recovery collection account appearing on her Leasing Desk report, which was negatively impacting her credit score.

67.     Shortly thereafter, in or about January 2020, Plaintiff received an adverse action notice from AMLI at Mueller, which specifically indicated her credit score and the following key factors that adversely affected her credit score and rental application:

1.  Derogatory public record or collection filed;

2.  Length of time since derogatory public record or collection it too short;

3.  Credit Score; and

4.  Rental Payment History.

68.     Plaintiff's rental application was denied due to "[c]redit history unsatisfactory."

69.     Plaintiff's rental application with AMLI at Mueller was denied due to Equifax's inaccurate credit reporting, specifically with regard to the Rent Recovery collection tradeline, Account number ending in 8933.

**Plaintiff Disputes with Equifax, Trans Union, and Rent Recovery in April 2020**

70.     On or about April 29, 2020, frustrated and upset with the continued inaccurate credit reporting and multiple credit denials she had suffered, Plaintiff mailed written disputes via certified mail to Equifax, Trans Union, and Rent Recovery's consumer dispute departments, disputing the inaccurate reporting of the Rent Recovery tradeline, Account number ending in 8933. Specifically, Plaintiff's dispute stated as follows:

Rent Recovery Solutions; Collection; Account number [ending in 8933]

I am disputing the accuracy of this collection account on my credit report. This collection account relates to an eviction lawsuit filed against me in

the Justice Court, Precinct One, Travis County, Texas Case Number J1-CV-18-000797. On April 13, 2018, I entered into a Settlement Agreement with Park at Stone Creek Apartments ("Stone Creek") whereby it was agreed that "**no amounts are due [from me] to STONE CREEK.**" (see attached Settlement Agreement). On May 3, 2018, Case Number J1-CV-18-000797 was **dismissed with prejudice.** (see attached Order).

At some time after May 3, 2018, Stone Creek unlawfully sent the account, which I owe nothing on, to collector Rent Recovery Solutions, LLC, who is now unlawfully reporting this on my Trans Union credit report. To be clear, I do not owe a single penny to Stone Creek or Rent Recovery Solutions. Please reinvestigate this matter and delete the disputed collection account as soon as possible. Enclosed is a copy of my Trans Union credit report where I have highlighted the inaccurate collection account that I am requesting be deleted.

71.     Plaintiff attached a copy of her Equifax and Trans Union credit reports, highlighting the inaccurate Rent Recovery collection tradeline reported on each; a copy of her driver's license; a copy of the Order Dismissing Case with Prejudice; and a copy of the Settlement Agreement with Stone Creek.

**Synchrony Bank Lowers Plaintiff's Credit Line Due to Trans Union's Inaccurate Credit Reporting**

72.     On or about May 11, 2020, Plaintiff received written correspondence from Synchrony Bank regarding her Amazon.com Store Card account number ending in 8533.

73.     Synchrony Bank informed Plaintiff that based on her Trans Union credit score, it had lowered her credit line from $1,400.00 to $100.00.

74.     The following factors were listed as "credit characteristics where [Plaintiff] did not score well:"

1.  Delinquent or Derogatory Accounts; and

2.  Unpaid Collections.

13

75.     As of May 11, 2020, Trans Union was still reporting the Rent Recovery collection tradeline on Plaintiff's credit report and the account was not reported with the appropriate account in dispute notation.

**The Credit Reporting Agencies' Responses to Plaintiff's April 2020 Disputes**

76.     In or about May 2020, Trans Union sent an ACDV to Rent Recovery regarding the disputed collection tradeline, Account number ending in 8933.

77.     Rent Recovery instructed Trans Union to delete Account number ending in 8933 from Plaintiff's credit report.

78.     On or about May 12, 2020, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Rent Recovery's requested deletion of the collection tradeline and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union deleted the disputed collection tradeline from Plaintiff's credit report.

79.     Equifax failed to respond to Plaintiff's April 2020 dispute letter.

80.     Equifax failed to conduct a reinvestigation of the disputed collection tradeline within 30 days of receipt of Plaintiff's April 2020 dispute letter.

81.     Equifax did not indicate that Plaintiff's dispute was found to be frivolous or irrelevant.

82.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's April 2020 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

83.     Thereafter, Rent Recovery and Equifax continued to credit report the account on Plaintiff's credit report and Rent Recovery did so without reporting the account as in in dispute by Plaintiff.

### Rent Recovery's Response to Plaintiff's April 2020 Dispute

84.     Rent Recovery failed to respond, timely or otherwise, to Plaintiff's April 2020 dispute letter.

85.     Rent Recovery never notified Plaintiff whether it completed an investigation of her dispute or whether it determined the information was accurate or inaccurate.

86.     Rent Recovery did not report information related to Plaintiff's dispute to Equifax or any other consumer reporting agency.

87.     Rent Recovery did not perform any investigation into Plaintiff's dispute.

88.     Rent Recovery did not cease its collection efforts on the underlying debt.

### Equifax Confirms Receipt of Plaintiff's April 2020 Dispute Letter in May 2020 But Is Allegedly Unable to Locate Plaintiff's Credit File

89.     On or about May 12, 2020, Plaintiff received written correspondence from Equifax confirming receipt of her dispute regarding inaccurate information in her Equifax credit file and informing her that it was unable to locate her credit file in its database with the identification information she provided as part of her April 2020 dispute letter. Equifax requested additional documentation establishing proof of her identification.

90.     On or about July 23, 2020, Plaintiff resent the previous dispute letter to Equifax, which she had previously sent in April 2020, including all of the same attachments, but this time she also attached a copy of the front and back of her Social Security card, a copy of her apartment lease contract, and a copy of one of her recent utility bills. All of the attached documents provided

more than enough identification information regarding Plaintiff for Equifax to locate her credit file.

91.     Plaintiff never heard back from Equifax.

92.     Equifax did not indicate that Plaintiff's July 2020 dispute was found to be frivolous or irrelevant.

93.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's July 2020 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

94.     Thereafter, Equifax continued to report the disputed Rent Recovery collection tradeline on Plaintiff's credit report.

95.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedure to Assure Maximum Possible Accuracy
### (Against Defendants Equifax and Trans Union)

96.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-95 as if fully stated herein.

97.     Defendants Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintain concerning Plaintiff.

98.     As a result of Defendants Equifax and Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her good credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

99.     Defendants Equifax and Trans Union's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100.     Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform Reasonable Reinvestigation**
**(Against Defendant Equifax)**

101.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-95 as if fully stated herein.

102.     Defendant Equifax violated multiple sub-sections of 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after it received notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Rent Recovery; by failing to maintain reasonable procedures with which to filter

and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it had reason to know is unreliable.

103.     As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her good credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

104.     Defendant Equifax's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.     Plaintiff is entitled to recover attorney's fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. §§ 1692e and 1692f**
**False and Misleading Representations and Unfair Practices in Connection with the Collection of a Debt**
**(Against Defendant Rent Recovery)**

106.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-95 as if fully stated herein.

107.     The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in false and misleading, unfair, and deceptive practices in the process of attempting to collect a debt.

108.     At all times material herein, Plaintiff was a "consumer" as defined by 15 U.S.C. § 1692a(3), since she is a natural person allegedly obligated to pay a consumer debt.

109.     At all times material herein, Plaintiff's alleged debt was a "debt" as defined by 15 U.S.C. § 1692a(5).

110.     At all times material herein, Rent Recovery was a "debt collector" as defined by 15 U.S.C. § 1692a(6).

111.     Defendant Rent Recovery repeatedly used false, deceptive, and misleading representations to collect or attempt to collect a debt, specifically the disputed collection tradeline, Account number ending in 8933, from Plaintiff, despite the fact that Plaintiff doesn't owe the debt because it was settled and dismissed in April 2018, in violation of 15 U.S.C. § 1692e.

112.     Defendant Rent Recovery repeatedly used unfair or unconscionable means to collect or attempt to collect a debt, specifically the disputed collection Account number ending in 8933, from Plaintiff, despite the fact that Plaintiff doesn't owe the debt because it was settled and dismissed in April 2018, in violation of 15 U.S.C. § 1692f.

113.     As a direct and proximate result of Defendant Rent Recovery's conduct, action, and inaction, Plaintiff suffered damage including but not limited to, actual damages and emotional distress, including emotional pain, stress, anxiety, anguish, humiliation, embarrassment, and fear of financial ruin.

114.     Plaintiff is entitled to recover any actual damage she sustained as a result of Defendant Rent Recovery's failings pursuant to 15 U.S.C. § 1692k(a)(1).

115.     Plaintiff is entitled to recover statutory damages in the amount of $1,000.00 as a result of Defendant Rent Recovery's failings pursuant to 15 U.S.C. § 1692k(a)(2)(A).

116.     Plaintiff is entitled to recover her attorney's fees and costs from Defendant Rent Recovery in an amount to be determined by the Court pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT IV
### Tex. Fin. Code § 392.202
### Correction of Third-Party Debt Collector's or Credit Bureau's Files
### (Against Defendant Rent Recovery)

117.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-95 as if fully stated herein.

118.    The TXDCA provides as follows:

> CORRECTION OF THIRD-PARTY DEBT COLLECTOR'S OR CREDIT BUREAU'S FILES. (a) An individual who disputes the accuracy of an item that is in a third-party debt collector's or credit bureau's file on the individual and that relates to a debt being collected by the third-party debt collector may notify in writing the third-party debt collector of the inaccuracy. The third-party debt collector shall make a written record of the dispute. If the third-party debt collector does not report information related to the dispute to a credit bureau, the third-party debt collector shall cease collection efforts until an investigation of the dispute described by Subsections (b)-(e) determines the accurate amount of the debt, if any. If the third-party debt collector reports information related to the dispute to a credit bureau, the reporting third-party debt collector shall initiate an investigation of the dispute described by Subsections (b)-(e) and shall cease collection efforts until the investigation determines the accurate amount of the debt, if any. . . .

Tex. Fin. Code § 392.202.

119.    Rent Recovery failed to make a written record of Plaintiff's dispute with the consumer reporting agencies when it did not mark the fact of Plaintiff's dispute on the tradeline reported by Rent Recovery, in violation of Tex. Fin. Code § 392.202.

120.    Indeed, credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

121.    As a direct and proximate result of Defendant Rent Recovery's conduct, action, and inaction, Plaintiff suffered damage including but not limited to, actual damages and emotional distress, including emotional pain, stress, anxiety, anguish, humiliation, embarrassment, and fear of financial ruin.

122.    Plaintiff is entitled to recover any actual damage she sustained as a result of Defendant Rent Recovery pursuant to Tex. Fin. Code § 392.403(a)(2).

123.    Plaintiff is entitled to recover statutory damages in the amount of $100 per violation as a result of Defendant Rent Recovery's violations pursuant to Tex. Fin. Code § 392.403(e).

124.    Plaintiff is entitled to recover her attorney's fees and costs from Defendant Rent Recovery in an amount to be determined by the Court pursuant to Tex. Fin. Code § 392.403(a)(1).

125.    Plaintiff is entitled to an order directing Defendant Rent Recovery to cease communicating the alleged debt to consumer reporting agencies without information regarding Plaintiff's dispute pursuant to Tex. Fin. Code. §392.403(a)(1).

### COUNT V
### Tex. Fin. Code § 392.202
### Correction of Third-Party Debt Collector's or Credit Bureau's Files
### (Against Defendant Rent Recovery)

126.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-95 as if fully stated herein.

127.    The TXDCA provides as follows:

THREATS OR COERCION. (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:

. . . (3) representing or threatening to represent to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute. . . .

21

Tex. Fin. Code § 392.301.

128.    Defendant Rent Recovery represented that Plaintiff was willfully refusing to pay a non-disputed consumer debt, in violation of Tex. Fin. Code § 392.301, when it failed to communicate the fact of Plaintiff's dispute to the consumer reporting agencies.

129.    Defendant Rent Recovery's collection communications are to be interpreted under the "unsophisticated consumer" standard. *See, Gammon v. GC Services, Ltd. Partnership*, 27 F.3d1254, 1257 (7th Cir. 1994).

130.    As a direct and proximate result of Defendant Rent Recovery's conduct, action, and inaction, Plaintiff suffered damage including but not limited to, actual damages and emotional distress, including emotional pain, stress, anxiety, anguish, humiliation, embarrassment, and fear of financial ruin.

131.    Plaintiff is entitled to recover any actual damage she sustained as a result of Defendant Rent Recovery's violations pursuant to Tex. Fin. Code § 392.403(a)(2).

132.    Plaintiff is entitled to recover statutory damages in the amount of $100 per violation as a result of Defendant Rent Recovery's violations pursuant to Tex. Fin. Code § 392.403(e).

133.    Plaintiff is entitled to recover her attorney's fees and costs from Defendant Rent Recovery in an amount to be determined by the Court pursuant to Tex. Fin. Code § 392.403(a)(1).

134.    Plaintiff is entitled to an order directing Defendant Rent Recovery to cease communicating the alleged debt to consumer reporting agencies without information regarding Plaintiff's dispute pursuant to Tex. Fin. Code. §392.403(a)(1).

## COUNT VI
## 15 U.S.C. §1681s-2(b)
## Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
## (Against Defendant Rent Recovery)

135.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-95 as if fully stated herein.

136.    Defendant Rent Recovery published the negative entries to Defendants Equifax and Trans Union.

137.    Defendant Rent Recovery violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of its inaccurate representations; by failing to review all relevant information regarding the same; by failing to accurately respond to Defendants Equifax and Trans Union; by failing to correctly report results of an accurate investigation to Defendants Equifax and Trans Union; and by failing to permanently and lawfully correct its own internals records to prevent the re-reporting of its inaccurate representations to Defendant Equifax and Trans Union.

138.    As a result of Defendant Rent Recovery's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her good credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

139.    Defendant Rent Recovery's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

140.    Plaintiff is entitled to recover attorney's fees and costs from Defendant Rent Recovery in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that Defendants, jointly and severally, negligently and/or willfully violated the FCRA;

b)    Awarding actual damages, statutory, and punitive damages as provided by the FCRA, FDCPA, and TXDCA;

c)    Awarding reasonable attorneys' fees and costs as provided by the FCRA, FDCPA, and TXDCA;

d)    Awarding injunctive relief to Plaintiff pursuant to the TXDCA; and

e)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

141.    Plaintiff demands a trial by jury.

Dated: May 12, 2021.

s/ Hans W. Lodge_____
Hans W. Lodge, Bar No. 0397012
BERGER MONTAGUE, PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bm.net

Micah S. Adkins
TX BAR NO. 24088777
THE ADKINS FIRM, P.C.
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T: (615) 370.9659
F: (205) 208.9632
E: MicahAdkins@ItsYourCreditReport.com

*ATTORNEYS FOR PLAINTIFF*